Morgan *v.* Groff.

---

---

SAME TERM.   *Before the same Justices.*

### MORGAN *vs.* GROFF.

Money paid upon an illegal contract may, while the contract remains executory, be recovered back, in an action founded upon its disaffirmance, and on the ground that it is void. But where the contract is executed, and the money has been paid over, the maxim *potior est conditio possidentis* applies.

Where money was deposited by the plaintiff, with the defendant, as his agent, for the purpose of being bet, with a particular person, on the plaintiff's account, upon the event of an election, and the defendant instead of making the bet with the person designated, used the money in betting with others, and lost it; *Held*, that the contract between the parties, if any, was never executed, but continued executory—the money, in contemplation of law, still remaining in the defendant's hands—and that the plaintiff might maintain an action against the defendant for the recovery thereof, although it had been paid over to the winners.

*Held also*, that no wager or bet authorized by the plaintiff having been made, the provision of the revised statutes, (1 *R. S.* 662, § 8,) relative to contracts on account of money bet or wagered, did not apply; that provision relating only to contracts on account of wagers or bets where the wager or bet is actually made.

As long as money deposited with an agent for an illegal purpose remains unemployed, or if the purpose be countermanded by the principal before its applica-

Morgan *v.* Groff.

cation, it is a debt which may be recovered from the agent, by the principal, either at law or in equity.

THIS was an action of assumpsit, for money had and received, and on the money counts generally. The cause was tried at the Saratoga circuit, in August, 1848, before Justice WILLARD. On the trial the plaintiff proved, by Jeremiah Green, that Green sent to the defendant the plaintiff's check on the Saratoga County Bank for $50, dated October 23, 1844, about the time it bore date. The witness testified that the plaintiff gave him the check to be sent to the defendant, to form part of a bet, to be made by the defendant for the plaintiff and others with one R. Thompson, on the presidential election. The plaintiff directed that the defendant should return the check, if that bet was not made. The witness enclosed the plaintiff's check, to the defendant; with directions to return the check, if the bet was not taken. Before the election the plaintiff called on the witness, and asked him if the defendant had returned his check. The witness replied that the defendant had not, but he presumed he would send it back. This evidence was objected to, but was admitted. In December, 1844, after the election, the plaintiff called on the defendant. The defendant told him that he had drawn the money on the check, and said that he had made bets with other persons, (not with R. Thompson,) and calculated to have the $50 received from the plaintiff applied on those bets, which had been lost; and that he had paid over the money to the winners. The defendant refused to return the $50 he had received from the plaintiff. The defendant moved for a nonsuit. The plaintiff insisted that the cause should be submitted to the jury. But the presiding justice, in accordance with the decision of the old supreme court, there being no disputed fact in the case, nonsuited the plaintiff. The plaintiff moved to set aside the nonsuit, and for a new trial.

*E. F. Bullard,* for the plaintiff.

*T. C. Ripley,* for the defendant.

Morgan v. Groff.

*By the Court*, PAIGE, J.   Wager contracts upon indifferent matters were valid at common law.   (3 *Term Rep.* 603.   5 *Burr.* 502.   1 *Cowp.* 37.   2 *Id.* 734.   4 *John.* 434.   16 *East*, 156.)   But all wagers which tended to a breach of the peace, or to injure the feelings, character, or interests of a third person, or which were against the principles of morality, or of sound policy, were void at common law.   (*See the cases above cited, and* 1 *Term Rep.* 50;   2 *Bos. & Pul.* 130;   7 *John.* 434;   4 *Kent's Com.* 466.)   All wager contracts in contravention of the positive provisions of any statute law are also void.   Our present statute, (1 *R. S.* 662, §§ 8 *and* 9,) reaches and makes void wagers of every description.   It declares that " all wagers, bets, or stakes made to depend upon any gaming by lot or chance, or upon any lot, chance, or casualty, or unknown or contingent event whatever, shall be unlawful;" and that " all contracts for, or on account of any money or property or thing in action so wagered, bet, or staked, shall be void."   These provisions invalidate every wager which was allowed at common law.   Wagers upon the result of a popular election are void at common law, independent of the statute.   This was so held in *Bunn* v. *Riker*, (4 *John. Rep.* 426 ;)   *Lansing* v. *Lansing* (8 *Id.* 354 ;)   *Vischer* v. *Yates*, (11 *Id.* 23 ;)   *Yates* v. *Foot*, (12 *Id.* 1 ;)   *Denniston* v. *Cook*, (*Id.* 376 ;)   *Rust* v. *Gott*, (9 *Cowen*, 169 ;) and in *Bush* v. *Keeler*, (5 *Wend.* 250.)   The principles settled in these cases invalidate all wagers upon elections, whether made before, during, or after the election.   Such wagers are pronounced void at common law, because they are against the principles of sound policy.   (4 *John.* 434, *per Van Ness, J.    Allen* v. *Harris*, 1 *Term Rep.* 59.   *Vischer* v. *Yates*, 11 *John.* 28, *per Kent, Ch. J.    Rust* v. *Gott*, 9 *Cowen*, 174, 175, *per Woodworth, J.*)   A wager contract is equally void if it be against the principles of public policy, as if it contravenes a positive law.   This was so decided in *Jones* v. *Randall*, (*Cowp.* 37,) and in *Mount* v. *Wait*, (7 *John.* 440, *per Kent, Ch. J.*)

There is a distinction between executory and executed illegal contracts.   Where money has been paid on an illegal contract which has been executed, and both the parties are *in*

*pari delicto*, neither of them can recover from the other the money so paid; but if the contract is executory, and the party paying the money is desirous of rescinding the contract, he may do so, and recover back his money by action of assumpsit for money had and received. A distinction is taken where the action is in affirmance of an illegal contract, and the object of which is to enforce its performance; and where the action proceeds in disaffirmance of such a contract, and on the ground that it is void, and seeks to prevent the defendant from retaining the benefit which he has derived from an unlawful act. (2 *Com. on Cont.* 109, 110.) This distinction was recognized in *Colton* v. *Thurland*, (5 *Term Rep.* 405;) *Smith* v. *Birkmore*, (4 *Taunt.* 474;) *Hastelon* v. *Jackson*, (8 *Barn. & Cress.* 221, *per Littledale, J.;*) *Vischer* v. *Yates*, (11 *John.* 29, 30, *per Kent, Ch. J.;*) and in *Yates* v. *Foote*, (12 *Id.* 13, *per Sanford, Senator;*) in *Utica Ins. Co.* v. *Kip*, (8 *Cowen's Rep.* 20;) *Mount* v. *Stokes*, (4 *Term Rep.* 564, *per Buller, J.*) and in *Lowers* v. *Bordien*, (*Doug.* 470, *per Buller, J.*) In *Edgar* v. *Fowler*, (3 *East*, 225,) Lord Ellenborough says, "in illegal transactions, the money may always be stopped while it is *in transitu* to the person who is entitled to receive it." But where the contract is executed, and the money has been paid over, the maxim *potior est conditio possidentis* applies. The court will not then assist either party. In *Hastelon* v. *Jackson*, (8 *Barn. & Cress.* 221,) which was a suit, by one of the parties to a wager on the event of a boxing match, commenced against the stakeholder, after the battle had been fought, Littledale, J. says: "If two persons enter into an illegal contract, and money is paid upon it by one to the other, that may be recovered back before the execution of the contract, but not afterwards." The principle that money paid upon an illegal contract may, while the contract remains executory, be recovered back in an action founded upon its disaffirmance, and on the ground that it is void, is fully recognized and adopted by Kent, Ch. J. in *Vischer* v. *Yates*, and by Senator Sanford in *Yates* v. *Foot.* In *Vischer* v. *Yates*, (11 *John.* 29,) Kent, Ch. J. alludes to a distinction between contracts that are immoral

and criminal, and such as are simply illegal and void. He embraces a wager contract on the event of an election, within the latter class. In that case it was held, that the losing party, after the bet was lost, could recover his deposit from the stakeholder before the money has been paid over to the winner, and after notice not to pay it over. This decision was reversed in the court of errors, in *Yates* v. *Foot*, (12 *John.* 1,) upon the ground that the deposit of the money with the stakeholder, the occurrence of the event, and the loss of the bet, constituted a partial execution of the contract, and as to the loser, a complete execution. But Senator Sanford expressly conceded, that the parties to the wager could have rescinded the contract, before the wager was decided by the occurrence of the contingent event on which it depended. In *Cotton* v. *Thurland*, (5 *Term Rep.* 405,) in *Smith* v. *Birkmore*, (4 *Taunton*, 474,) and in *Hastelon* v. *Jackson*, (8 *Barn. & Cress.* 221,) the courts of king's bench and common pleas of England held, that the losing party, after the wager was lost by him, was entitled to recover his deposit from the stakeholder, if demanded before it was paid over to the winner. These cases were decided upon the ground that the contract remained executory until the money was paid over to the winner, with the acquiescence of the loser.

If then, the transaction in this case, between the plaintiff and defendant, can, in any view which may be taken of it, be regarded as a contract, it is very clear that it was never executed. The contract, if any, was that the money sent to the defendant should be bet by the defendant for the plaintiff, with Thompson. This bet never was made. The contract therefore, continued executory ; the money, in contemplation of law, remained in the defendant's hands, and was in his hands when this suit was commenced ; and the suit was brought in disaffirmance of the contract. I cannot see why, upon the principles of the cases cited, the plaintiff has not a perfect right to reclaim the money deposited by him in the hands of the defendant. The cases of *Perkins* v. *Savage*, (15 *Wend.* 412,) and of *DeGroot* v. *Van Duzer*, (20 *Id.* 396,) are in my judg-

ment inapplicable. Both these cases were actions founded upon the illegal contract, and in affirmance thereof; and the object in each case was to enforce the performance of the illegal contract. And *Best* v. *Strong,* (2 *Wend.* 319;) *Brush* v. *Keeler,* (5 *Id.* 250;) *Nellis* v. *Clark,* (20 *Id.* 24;) and *Jackson* v. *Walker,* (5 *Hill,* 27 ;) were also all actions founded on the illegal contract, and brought in affirmance thereof. Neither do the cases of *Peck* v. *Briggs,* (3 *Denio,* 107;) and of *McKusnell* v. *Robinson,* (3 *Mees. & Wels.* 434,) apply; as the money in this case was not lent to the defendant to be used in betting on the election. It was deposited with the defendant, as the plaintiff's agent, for the purpose of being bet, on the plaintiff's account, with Thompson. It was not money lent to the defendant for the purpose of being bet by him, on his own account. No wager or bet authorized by the plaintiff, was made ; and therefore the provision of the revised statutes, (1 *R. S.* 662, § 8,) in relation to contracts on account of money so bet or wagered, does not apply. That provision applies only to contracts on account of wagers or bets, where the wager or bet is actually made. A contract on account of a wager to be made, where the wager is never in fact made, is not reached by that provision of the revised statutes.

If the defendant was merely the agent of the plaintiff in making the contemplated bet with Thompson—and this is all the proof makes out—the defendant cannot excuse himself from paying over the money, because it was sent to him for an illegal purpose. As long as money deposited with an agent for an illegal purpose remains unemployed ; or if the purpose be countermanded by the principal before its application, it is a debt which may be recovered from the agent by the principal, either at law or in equity. (*Taylor* v. *Lendie,* 9 *East,* 49. 13 *Ves.* 313. 2 *Black. Com.* 467. *Tenant* v. *Elliot,* 1 *Bos. & Pul.* 3. *Farmer* v. *Russell,* 2 *Id.* 296. *Paley Ag. Dunlap's ed. p.* 62, § 8.) As no wager was made in this case ; that is, no wager authorized by the plaintiff; and as no contract was entered into between the plaintiff and defendant, for or, on account of any money, &c., " wagered, bet, or staked," this

case does not come within any of the provisions of the revised statutes. (1 *R. S.* 662, §§ 8, 9.) It must therefore be governed entirely by the principles of the common law applicable to such cases. And those principles are, in my opinion, entirely decisive, that the plaintiff's action is maintainable against the defendant. The policy of the revised statutes seems to be in favor of this action. The 9th section authorizes either party to a wager contract, to recover his deposit from the stakeholder; or from the winner, in case the same shall have been paid over to him. The intention and policy of this section are to restore to each party the money or property deposited by him, in pursuance of the wager contract. This policy was undoubtedly regarded by the framers of the law, as best calculated to cut up effectually the immoral practice of betting.

The motion to set aside the nonsuit, and for a new trial, must be granted.

----

SAME TERM.   *Before the same Justices.*