Howard E. Bell, J.
This is an action by .the plaintiff to recover the sum of $3,750 which he claims he lost to the defendant playing dice. The facts are as follows: In September, 1971, plaintiff and defendant Katz met on a plane on a flight from New York to the island of St. Maarten in the Carribbean. According to the plaintiff, they were going to the island for a period of five days ‘ ‘ for the purpose of gambling ’ ’. During the conversation Katz told the plaintiff he had something he wanted to talk to him about after they arrived in St. Maarten. Sometime after they arrived the parties met again, at which time Katz told the plaintiff that he conducts his own private games in an apartment in New York that he rents exclusively for that purpose. He gave the plaintiff .a business card and wrote a telephone number thereon. He also told the plaintiff that there are ‘ ‘ girls, drinking and fun ” at his games.
A few days after the plaintiff returned to New York, he received a call from Katz inviting him to a game to be held at an apartment on East 74th Street in Manhattan. The plaintiff did not immediately accept the invitation but on the day before *325 the game was scheduled to be held, he called Katz and informed him he would attend.
The plaintiff arrived at the apartment at approximately 9:00 jp.m. ; he was given a drink or two and was told that there were “ a couple of fellows and girls in the back room ” and why didn’t he go in and have some fun. Plaintiff was ushered into the room but spent little time there because preparation for the dice game was immediately made in an adjacent room and the game began.
Plaintiff testified that as the game was about to commence, Katz ‘ ‘ took out ’ ’ the dice and gave him $500 worth of chips. Katz did not, however, participate in the game. The participants were the six or seven people the plaintiff found in the apartment when he arrived. The game ended at approximately 1:00 p.m. when the plaintiff quit. Plaintiff did not win at all during the game and lost a total of $3,000. He gave Katz a check for the amount drawn to the order of cash. When the check was returned to the plaintiff (after it had been cashed by his bank), it contained the indorsement of the corporate defendant, Distinctive Tours, Ltd.
Plaintiff also testified that most of those who won at the game were told by Katz to come to his office the next morning and ‘ ‘ he would straighten things out ’ ’.
One or two days after the first game the plaintiff received a call from Katz inviting him to come by for a second game and “ try to get even ”. The second game was held within a period of five days after the first and the plaintiff was once again a participant. The other participants were the same persons who had participated in the first game. Katz did not participate in this game even though he told the plaintiff, at the time the invitation was extended, that he would help him “ get even ”. Katz, as before, furnished the dice and the chips. In this game the plaintiff had winnings in the amount of $1,600 to $1,700 but when the game ended he had lost $4,500. Plaintiff gave Katz a check for that amount drawn to the order of cash. The next day he called Katz and asked him to hold the check because he needed time “ to get the money together ”. After receiving a number of calls from Katz demanding the money, the plaintiff made a partial payment thereof in the amount of $750. This check was drawn to the order of Sam Katz. When Katz contacted the plaintiff for the balance of the $4,500 plaintiff refused to pay.
It is the contention of counsel for the defendants that the plaintiff is not entitled to recover because the defendants did not participate in the games and were therefore not the winners of the $3,750 that the plaintiff claims he lost.
*326 At common law no action conld be maintained for the recovery of money lost at gambling (Meech v. Stoner, 19 N. Y. 26; Landley v. Fischer, 226 App. Div. 352). By reason of the statutes (Rev. Stat. of N. Y., part I, ch. XX, tit. 8, § 14) re-enacted in the former Penal Law (§ 995) and finally re-enacted in the General Obligations Law (§ 5-421), losers at certain forms of gambling are permitted to maintain actions to recover their losses. Section 5 — 421 of ¡the General Obligations Law states: “ Every person who shall, by playing at any game, or by betting on the sides or hands of such as do play, lose at any time or sitting, the sum or value of twenty-five dollars or upwards, and shall pay or deliver the ¡same or ariy part thereof, may, within three calendar months after such payment or delivery, sue for and recover the money or value of the things so lost and paid or delivered, from the winner thereof. ’ ’ A loss sustained as the result of playing dice is covered by the statute (cf. Langworthy v. Broomley, 29 How Prac. 92; Wilkenfeld v. Attic Club, 74 Misc. 543; Mrowiec v. Polish Army Veterans Assn. of Amer., Post 124 of Syracuse, 190 Misc. 423).
The court has found no reported case deciding the precise issue presented herein. The nearest case in point found is Johnson v. Clark (23 Misc. 346) where the court permitted the plaintiff to recover jewelry given as security for, or payment of, poker chips lost in a game played at the defendant’s gambling place. In that case the court indicated it was a game in which the defendant ‘ ‘ took part. ’ ’ In the case at bar the defendants did not participate in the games.
Notwithstanding Johnson v. Clark (supra), the statute says the loser in the game is entitled to recover his losses from the winner. It does not say that the winner has to be a participant in the game. The court is not unmindful that a winner in a game of dice is invariably a person who is present and placing bets.
A casual perusal of the evidence would indicate that the defendant Sam Katz, not having participated in the games, had nothing to do with the plaintiff’s loss and was not the recipient thereof, in a manner in which he could be considered the winner. A more careful scrutiny, however, indicates that Katz’s hands may not be as clean as they appear to be in connection with the loss sustained by the plaintiff.' In addition to simply providing the apartment for the game, he furnished the dice. In the plaintiff’s words, “ there were some chairs and a board set upon a floor, and Mr. Katz took ¡some dice out and put them out, and we started to shoot craps ’ ’. The game was not started until the plaintiff arrived and it ended when he quit. Most of the appar *327 ent winners at the two games were tiot paid at the end thereof but were told by Katz he ‘ ‘ would straighten things out ’ ’ the next morning at his office. No proof was offered by Katz to show that they were ever paid. After the plaintiff’s loss in the first game, Katz enticed him to return for the second game by saying that he would help him “ get even ”.
The disguised winner of the losses sustained by the plaintiff was the defendant Sam Katz. To say that he was not would be dealing in fantasy and not reality.
The complaint alleges two causes of action. In the first cause of action, the plaintiff seeks to recover the $3,000 that he lost and in the second cause of action, he seeks to recover the $750 lost. The latter sum ($750) was paid to the defendant Sam Katz by the plaintiff with the check of Cross America Credit Corporation. Since that corporation is not a party to this action, the second cause of action is dismissed, without prejudice to the institution of an action de novo upon joinder of Cross America Credit Corporation as a necessary party.
The clerk is directed to enter judgment in favor of the plaintiff and against the defendant, Sam Katz, for the sum of $3,000 on the first cause of action, together with interest, costs and disbursements as prayed for in the complaint. The action is dismissed as to the defendant Distinctive Tours, Ltd. There is no evidence indicating that this corporate defendant had any connection with the plaintiff’s losses.
The defendant’s counterclaim was dismissed on the record at the conclusion of the trial for the lack of evidence to sustain it.